UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES BERNECKI, WESLEY ELLING,
SHAWNA FINEIN, ROSARIO PITTA,
And NOLAN AVRAKOTOS,

                    Plaintiffs,


                -v-                     6:25-CV-74

OVERDRIVE ESPRESSO LLC and
HELEN "NITSA" FILIPPIDIS,

                    Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                   OF COUNSEL:

MANSELL LAW LLC           GREG MANSELL, ESQ.
Attorneys for Plaintiffs
1457 S. High Street
Columbus, OH 43207

KOHRMAN JACKSON        THOMAS J. HUNT, ESQ.
   & KRANTZ LLP
Attorneys for Defendants
1375 East Ninth Stret
Cleveland, OH 44114

WOODS OVIATT GILMAN LLP    ANDREW J. RYAN, ESQ.
Attorneys for Defendants
1900 Bausch & Lomb Place
Rochester, NY 14606

DAVID N. HURD
Senior United States District Judge

<u>**DECISION and ORDER**</u>

# I. <u>INTRODUCTION</u>

On January 15, 2025, plaintiffs James Bernecki, Wesley Elling, Shawna Finein, Rosario Pitta, and Nolan Avrakotos (collectively, "plaintiffs") commenced this action against defendants Overdrive Espresso LLC ("Overdrive") and Helen "Nitsa" Filippidis ("Filippidis") for allegedly unlawful employment practices. Dkt. No. 1. Specifically, plaintiffs' seven-count complaint sets forth claims for pay frequency violations, unlawful pay deductions, failure to provide accurate notices, failure to provide accurate wage statements, failure to pay overtime wages, and forced labor in violation of the New York Labor Law (the "NYLL"), the Fair Labor Standards Act (the "FLSA"), and the Trafficking Victims Protection Act. *Id.*

On April 15, 2025, defendants moved to dismiss plaintiffs' complaint pursuant to the doctrine of *forum non conveniens* and Federal Rules of Civil Procedure ("Rule(s)") 12(b)(1) and 12(b)(6). Dkt. No. 15. Plaintiffs have opposed. Dkt. No. 19. The matter has been fully briefed and will be considered on the basis of the submissions and without oral argument.[1] Dkt. No. 20.

---

[1] Plaintiffs sought leave to file a sur-reply. Dkt. No. 21. Defendants opposed. Dkt. No. 22. That motion was denied. Dkt. No. 23.

## II. __BACKGROUND__

Overdrive is an Ohio limited liability company that performs maintenance, service, and repairs on coffee and espresso machines for clients across multiple states. Compl. ¶¶ 12, 14, 15. Filippidis is an owner of Overdrive. *Id.* ¶ 13. As an owner, Filippidis has the authority to set payroll policies and practices, hire and fire employees, and to set wages as well as other terms of employment. *Id.*

Plaintiffs are individual former employees of the defendants. Compl. ¶¶ 7–11, 26. Filippidis recruited plaintiffs to work as hourly coffee/espresso technicians for Overdrive. *Id.* ¶¶ 27, 29, 32. Plaintiffs worked for defendants between 2018 and 2023. *Id.* ¶ 26.

Upon their hiring, Filippidis required each of the plaintiffs to sign employment contracts. Compl. ¶ 30. These contracts contained a "Reimbursement of Training Expenses" clause (the "training clause"). *Id.* Under the training clause, plaintiffs were each obligated to reimburse defendants for the cost of their training if their employment was terminated within the first year. *Id.* Plaintiffs were also required to separately sign Cognovit notes and confessions of judgments to enforce the training clause. *Id.* ¶ 31.

Plaintiffs performed manual labor for Overdrive's clientele. *Id.* ¶ 29. Plaintiffs' responsibilities included traveling to different coffee shops and

servicing, maintaining, and repairing coffee and espresso machines for clients. *Id.* ¶ 25. Plaintiffs' work required them to drive between Overdrive's customers' locations to perform manual manipulations with the customer's coffee/espresso equipment. *Id.* ¶ 33. The work was physically demanding and required a high level of physical fitness. *Id.* ¶ 34. Traveling to and from Overdrive's customers also made for long hours. *Id.* ¶ 35. Plaintiffs were paid an hourly wage for their labor and often worked in excess of forty (40) hours in a week. *Id.* ¶¶ 29, 36.

While plaintiffs worked for Overdrive, Filippidis supervised plaintiffs, set plaintiffs' wages, controlled plaintiffs' work schedule, and controlled plaintiffs' work conditions. *Id.* She had the power to hire and to fire Overdrive employees. *Id.* Specifically, Filippidis was responsible for setting policies for plaintiffs regarding work allocation, task supervision, and monitoring work product. In addition, Filippidis was in control of the payroll at Overdrive. *Id.* She also maintained plaintiffs' employment records and determined plaintiffs' timekeeping policies. *Id.* ¶¶ 27–28.

However, according to plaintiffs, they were not provided with complete and accurate wage statements or notices. Compl. ¶¶ 40–41. Specifically, plaintiffs' wage statements often failed to include their regular rate of pay, their overtime rate of pay, or the hours they worked that pay period. *Id.* ¶ 42. Without the proper wage notices, plaintiffs were unaware of defendants'

failure to pay their overtime wages or pay them at the correct frequency. *Id*. ¶ 43. Simply put, they had no idea what defendants were doing was illegal.

According to plaintiffs, defendants' alleged wrongdoing was knowing, intentional, and willful. Compl. ¶ 79. Defendants were aware that failing to properly pay their plaintiffs would financially harm them. *Id*. ¶ 81. Defendants were also aware that failing to provide plaintiffs with their wage notices, defendants could conceal their wrongdoing. *Id*. ¶ 83.

### 1. **Plaintiff James Bernecki**

Plaintiff James Bernecki ("Bernecki") worked for defendants between December of 2018 and January of 2021. Compl. ¶ 44. Bernecki primarily worked in New York, servicing Overdrive customers in "Utica, Erie, New York, and Broome and Jefferson Counties." *Id*. ¶ 46. Bernecki's hourly rate was initially $15.00 but was increased to $22.00 in 2020. *Id*.

During the course of Bernecki's employment, he regularly received bonuses and commissions. Compl. ¶ 47. However, defendants failed to include his bonuses and commission in his overtime rate of pay when he worked an excess of forty (40) hours. *Id*. ¶ 48. As a result, Bernecki was not paid the correct hourly wage for his overtime hours. *Id*. ¶ 49.

### 2. **Plaintiff Wesley Elling**

Plaintiff Wesley Elling ("Elling") worked for defendants between 2019 and 2023. Compl. ¶ 50. Elling's hourly rate was originally $15.00 but was raised

to $22.00 in 2021.  *Id*. ¶ 51.  Elling primarily worked in the State of New York, in the counties of Monroe, Erie, and Onondaga.  *Id*. ¶ 52.  Elling would occasionally work in Clinton and Oneida counties.  *Id*.

During the course of his employment, Elling frequently received bonuses and commissions for his work.  Compl. ¶ 53.  However, defendants neglected to include Elling's bonuses and commissions in his overtime rate of pay when he worked more than forty (40) hours per week.  *Id*. ¶¶ 53–55.  As a result, Elling was not paid the correct hourly wage for his overtime hours.  *Id*. ¶ 55.  Additionally, when Elling left Overdrive, defendants withheld his final paycheck, claiming that he was "negative on paid time off."  *Id*. ¶ 56.[2]

### 3. **Plaintiff Shawna Finein**

Plaintiff Shawna Finein ("Finein") worked for defendants between 2022 and 2023.  Compl. ¶ 58.  At the start of her employment, Finein was paid an hourly rate of $17.00.  *Id*. ¶ 59.  Her pay was later increased to $22.  *Id*.  Finein worked predominantly in the State of New York, in the counties of Onondaga, Monroe, Erie, and Broome.  *Id*. ¶ 60.

Throughout her employment with Overdrive, Finein also received commissions and bonuses for her work.  *Id*. ¶ 61.  However, defendants failed to include Finein's commissions and bonuses in her overtime rate of pay.  *Id*.

---

[2]  Defendants also withheld $80.00 from Elling's paycheck for a rachet that he claims was a gift from his father.  *Id*. ¶ 57.

¶ 62. As a result, Finein was not paid the correct hourly wage for her overtime hours. *Id.* ¶ 63.

Eventually, Finein informed defendants of her intention to leave Overdrive. *Id.* ¶ 64. In response, defendants informed Finein that they intended to enforce the training clause of Finein's employment agreement unless she agreed to stay on a "part time basis." *Id.* Finein eventually quit her job with Overdrive before her one-year training clause expired. *Id.* ¶ 65. When she quit, defendants again threatened Finein with legal action. *Id.* Defendants later secured a judgment against her and are actively attempting to enforce that judgement. *Id.* ¶¶ 64–65.

### 4. **Plaintiff Rosario Pitta**

Plaintiff Rosario Pitta ("Pitta") worked for defendants between 2021 and 2022. Compl. ¶ 66. Pitta was paid and hourly wage of $15.00 which was increased to $17.00 in 2021. *Id.* ¶ 67. Pitta primarily worked in the State of New York. *Id.* ¶ 68. She worked in the counties of Erie, Chautauqua, Niagara, Monroe, Genesee, Ontario, Oneida, Madison, Tompkins, Cayuga, Saratoga, and Clinton. *Id.*

When Pitta tried to leave his job at Overdrive, defendants informed Pitta that they intended to enforce the training clause of his employment contract. Compl. ¶ 69. Pitta continued his employment with Overdrive on a part-time basis for a full year until the training clause expired. *Id.* ¶ 70.

### 5. **Plaintiff Nolan Avrakotos**

Plaintiff Nolan Avrakotos ("Avrakotos") worked for defendants between 2021 and 2022.  Compl. ¶ 71.  Avrakotos was paid an hourly wage of $18.00.  *Id*. ¶ 72.  He worked primarily in the State of New York in the counties of Erie, Chautauqua, Monroe, Onondaga, and Clinton.  *Id*. ¶ 73.  Plaintiff also worked in Ohio and Michigan on occasion for Overdrive.  *Id*.

Like his coworkers, Avrakotos also regularly received commissions and bonuses for his work at Overdrive.  Compl. ¶ 74.  However, defendants failed to include these commission and bonuses in Avrakotos's overtime rate when he worked more than forty (40) hours per week.  *Id*. ¶ 75.  As a result he was not paid the correct hourly wage for his overtime.  *Id*. ¶ 76.

## III.  **LEGAL STANDARD**

### A. ***Forum Non Conveniens***

When reviewing a motion to dismiss pursuant to the doctrine of *forum non conveniens*, a district court "typically relies strictly on the pleadings and affidavits, but may also order limited discovery if deemed necessary."  *Rei v. Experience Outdoors LLC*, 2022 WL 4324656, at *2 (N.D.N.Y. Sept. 19, 2022) (citing *Longo v. FlightSafety Int'l, Inc.*, 1 F. Supp. 3d 63, 67 (E.D.N.Y. 2014).  The court must view the facts in the light most favorable to the plaintiffs "because the plaintiff risks losing its chosen forum by enforcement of the forum-selection clause, . . . and no dispute [of] fact should be resolved against

[the plaintiff]' absent an evidentiary hearing." *Id.* (citing *Longo*, 1 F. Supp. 3d at 67).

### B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). Rule 12(b)(1) motions may be either *facial* or *fact-based*. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the complaint . . . and exhibits attached to it[.]" *Id.* To resolve a facial motion, the district court must "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (cleaned up). In doing so, the district court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence. *Carter*, 822 F.3d at 57. If defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert defendant's evidence. *Id.* To resolve a

fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue. *Id.*

### C. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Plaintiffs have set forth seven claims against defendants for (1) pay frequency violations in violation of the NYLL; (2) unlawful wage deductions in violation of the NYLL; (3) inaccurate wage notices in violation of the

NYLL; (4) inaccurate wage statements in violation of the NYLL; (5) failure to pay overtime wages in violation of the NYLL; (6) failure to pay overtime wages in violation of the FLSA; (7) forced labor in violation of the TVPA. Compl. ¶¶ 85–147.

Defendants have moved to dismiss plaintiffs' complaint in its entirety. Defs.' Motion to Dismiss, Dkt. No. 15 at 1. Plaintiffs offer three arguments in favor of dismissal. *First*, defendants argue that plaintiffs' employment agreements prevent them from litigating an employment dispute in this Court under the doctrine of *forum non conveniens*. Defs.' Mem. at 3–10. *Second*, defendants argue that plaintiffs' NYLL claims for lack of accurate wage notices and wage statements should be dismissed for lack of standing pursuant to Rule 12(b)(1). Defs.' Mem. at 10–12. *Third*, defendants argue that plaintiffs have failed to state a legally cognizable claim under TVPA §§ 1589(2)–(4) because plaintiffs freely signed their employment agreements— including their Cognvovit Notes. *Id*. at 12–13.

But before turning to the parties' arguments for or against dismissal of this case, the Court begins with a bit of housekeeping: As an initial matter, plaintiffs' employment contracts are central to this dispute. *Supra*. Plaintiffs refer to various provisions such as the training clause, Compl. ¶ 30, in the body of the complaint. Defendants have also appended copies of these agreements to Filippidis's affidavit. *See* Ex. A–E to Affidavit of Helen "Nitsa"

Filippidis, Dkt. Nos. 15-1–15-6. The Court notes that defendants attached an unsigned copy of plaintiff Avrakotos's employment agreement to the Filippidis affidavit, *see* Ex. C to Affidavit of Helen "Nitsa" Filippidis ("Ex. C"), Dkt. No. 15-4 at 10, but have since provided the Court with a signed copy of the same agreement later in their reply papers. Ex. 1 to Affirmation of Maria J. Orlando ("Ex. 1"), Dkt. No. 20-2. Upon review of the relevant affidavits, the Court is satisfied that defendant's error was inadvertent due to the use of an electronic signature on the agreement and does not require additional briefing nor does this issue require a separate evidentiary hearing. *See* Affirmation of Maria J. Orlando, Dkt. No. 20-1 at 1–2; *see also* Dkt. No. 23 (denying leave to file sur-reply).

With that settled, the Court will now move on to address defendants' arguments relating to the doctrine of *forum non conveniens*.

## A. *Forum Non Conveniens*

Defendants have moved to dismiss plaintiffs' claims under the NYLL and FLSA pursuant to the doctrine of *forum non conveniens*. Defs.' Mem. at 3–9. Defendants argue that the forum selection clauses contained in plaintiffs' respective employment agreements bar litigation in this Court. Defs.' Mem. at 3. Defendants argue that plaintiffs Elling, Finein, Pitta, and Avrakotos's NYLL and FLSA claims should be dismissed under the doctrine of *forum non conveniens* because their claims are subject to the forum selection clause

contained in their employment agreements. *Id*. at 3–8. Defendants further argue that although Bernecki did *not* sign the employment agreement, Bernecki's claims arising under the NYLSS and FLSA should still be dismissed because they are *intertwined* with his fellow plaintiffs' claims. *Id*. at 8–9.

In opposition, plaintiffs argue that *forum non conveniens* does not apply in this case. Pls.' Opp'n, Dkt. No. 19 at at 5–8. Plaintiffs argue that, as an initial matter, Bernecki did not sign an agreement containing a forum selection clause.[3] *Id*. at 5. Plaintiffs argue that with respect to Finein, Pitta, and for Elling's work for Overdrive prior to July 2021,[4] the forum selection clause is unenforceable. Pls.' Opp'n at 5–9.

*Forum Non Conveniens* is the appropriate mechanism to enforce a forum selection clause that identifies a state or foreign court as the selected forum. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce and a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). "In order to prevail on a motion seeking enforcement of a

---

[3] Plaintiffs also argue that Avrakotos either did not sign an employment agreement with a forum selection clause or did not sign an employment agreement at all by noting that the agreement defendants have appended to their motion papers itself is *unsigned*. *See* Ex. C at 10. However, as discussed *supra*, defendants have since provided the Court with a signed copy of this agreement.

[4] Plaintiffs note that Elling signed his employment agreement containing a forum selection clause two years of working with Overdrive. Pls.' Opp'n at 5–6; Ex. D to Affidavit of Helen "Nitsa" Filippidis ("Ex. D"), Dkt. No. 15-5 at 10.

forum-selection clause, the movant must demonstrate: (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Rei*, 2022 WL 4324656, at *2 (citing *Longo*, 1 F. Supp. 3d at 67). Once "the movant satisfies these elements, the burden shifts to the party opposing enforcement to (4) rebut the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id*. at *2 (quoting *Longo*, 1 F. Supp. 3d at 67–68).

The parties do not dispute that the forum selection clauses were reasonably communicated to them or that the clauses are mandatory. The parties only dispute the third element of this analysis: applicability of the forum selection clause. That is, whether plaintiffs' claims are "subject to" the forum selection clause. *Supra.*

Forum selection clauses are merely contractual provisions. Contracts are generally governed by state law. However, where a federal court is charged with determining the enforceability of a forum selection clause, federal law applies. *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972) ("Federal law must govern the ultimate enforceability of a forum selection clause to ensure

that a federal court may decline to enforce a clause if 'trial in the contractual forum [would] be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court,' or 'if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'").  But where the federal court must interpret the language of the forums selection clause itself, the body of law selected by the parties governs the analysis.  *See id*. at 217–18 (citation omitted) ("In answering the *interpretive* questions posed by parts two and three of the four-part framework, however, we normally apply the body of law selected in an otherwise valid choice-of-law clause.").

In opposition to applicability, plaintiffs argue that the forum selection clause contains narrow language that requires a causal connection between the claims asserted and the employment agreement itself.  Pls.' Opp'n at 5–8.  Plaintiffs argue that because their NYLL, FLSA, and TVPA claims do not arise out of the agreement or breach of the agreement, these claims are not covered by the forum selection agreement and may be asserted in this forum.  Pls.' Opp'n at 7.

In support of applicability, defendants argue that these claims are subject to the forum selection clauses because they necessarily arise out of plaintiffs' employment with and pay by Overdrive.  Defs.' Mem. at 7.  Defendants urge

that all of plaintiffs' claims, with the exception of their TVPA claims, relate directly to pay and compensation—issues directly contemplated by plaintiffs' employment agreements. *Id.*; Defs.' Reply, Dkt. No. 20 at 5. Defendants further argue that plaintiffs' TVPA claim disputes another aspect of plaintiffs' employment agreements: the training clause. Defs.' Mem. at 8.

As discussed, the issue of whether certain claims are covered by, or subject to, a forum selection clause is an *interpretive* dispute as opposed to an enforceability dispute. *See Martinez*, 740 F.3d at 244. Thus, as the Second Circuit has directed, the parties' choice of law—Ohio law[5]—governs the Court's analysis instead of federal law. *See id.*

The question becomes one of contract interpretation. We begin with the plain text of the agreement itself. Plaintiffs Finein, Pitta, Elling, and Avrakotos each signed employment agreements that contained the following language:

> Ohio's laws shall govern all disputes, controversies, matters of interpretation, and litigation arising hereunder. Company and Employee agree that, even if Employee is or becomes a resident of another State, County, or Country exclusive venue for all litigation arising under this Agreement lies with the Trumbull County Court of Common Pleas, Trumbull County,

---

[5] Plaintiffs' employment agreements each contain a choice of law provision designating Ohio state law as the governing law. *See* Ex. A to Affidavit of Helen "Nista" Filippidis ("Ex. A"), Dkt. No. 15-2 at 9; Ex. B to Affidavit of Helen "Nitsa" Filippidis, Dkt. No. 15-3 at 9; Ex. D to Affidavit of Helen "Nitsa" Filippidis ("Ex. D"), Dkt. No. 15-5 at 10; Ex. E to Affidavit of Helen "Nitsa" Filippidis ("Ex. E"), Dkt. No. 15-6 at 7; Ex. 1 at 10.

Ohio and, further, agree to submit (jointly and individually) to the personal jurisdiction of such Court.

Ex. A at 9; Ex. B at 9–10; Ex. D at 10; Ex. 1 at 10.  The key language here is "arising hereunder."

Defendants cite Ohio caselaw defining the term "arise under" as "'stemming from' or 'originating in'".  *Reichert v. Lauren Int'l., Ltd.*, 2012 WL 4848906 (Ohio App. 5 Dist., 2012) (quoting BLACK'S LAW DICTIONARY 102 (7th Ed. 1999)).  Plaintiffs, on the other hand, have offered Second Circuit precedent defining how broad or narrow the language "arising under" is in this context.  Pls.' Opp'n at 6–7.  However, as discussed, it is Ohio state laaw, not Second Circuit case law that applies in this case.  *Supra*.

### 1.  **Finein, Pitta, Elling, and Avrakotos**

The Court will first address defendants' *forum non conveniens* arguments as to plaintiffs Finein, Pitta, Elling, and Avrakotos.  Upon review and construing the facts in the light most favorable to these plaintiffs, the Court finds that the forum selection clauses apply to Finein, Pitta, Elling,[6] and Avrakotos's NYLL, FLSA, and TVPA claims.  The contract language "arising hereunder" refers broadly to all issues stemming from the employment agreement itself.  As defendants point out, the employment agreement

---

[6] As discussed Elling only signed an employment agreement two years into his employment with Overdrive.  As a result, the forum selection clause only bars his claims stemming from defendants' employment practices prior to July 2021.

- 17 -

contemplated rate of pay, frequency of pay, and the training clause. A review of plaintiffs' well plead complaint reveals that the instant litigation arises out of a wage and hour dispute as well as the enforceability of the training clause—or "claw back" provision. In sum, the litigation relates entirely to the employment relationship between the parties and the rights and obligations of the parties under various state and federal laws.

Therefore, the movant defendants have satisfied the initial *prima facie* showing that the forum selection clauses are enforceable. Thus, the burden now shifts to Finein, Pitta, Elling, and Avrakotos to make a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Rei*, 2022 WL 4324656, at *2 (citing *Longo*, 1 F. Supp. 3d at 67).

Upon review, Finein, Pitta, Elling, and Avrakotos have not made such a showing in their opposition papers. These four plaintiffs have not offered any arguments against the enforcement of the forum selection clause due to fraud, overreaching, etc. Therefore, the forum selection clauses contained in Finein, Pitta, Elling, and Avrakotos's employment agreements bar litigating their NYLL, FLSA, or TVPA claims in this forum. Accordingly, defendants' motion to dismiss Finein, Pitta, Elling, and Avrakotos' claims under the doctrine of *forum non conveniens* will be granted.

- 18 -

## 2. **Bernecki**

This leaves only plaintiff Bernecki.  It is undisputed that Bernecki did not sign a forum selection clause at any point during his employment with defendants.  In support of dismissing Bernecki's claims, defendants argue that if the Court allows Bernecki to proceed with his claims in this Court, there would be duplicative litigation in multiple venues based on the same facts, same legal theories, and pursuing the same relief.  Defs.' Mem. at 9.

In support of their argument, defendants cite *Magi XXI, Inc. v. Stato della Citta del Vaticano*, in which the Second Circuit held that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."  714 F.3d 714, 723 (2d Cir. 2013).  However, here defendants are asking this Court to permit a signatory to a forum selection clause to enforce it against a non-signatory.  Defs.' Mem. at 9.  Defendants argue that Bernecki has a close relationship with the remaining plaintiffs and "coordination"[7] with them supports enforcing the forum selection clause against Bernecki.  *Id*.  Defendants further argue that it was foreseeable for Bernecki that he would be required to litigate an employment dispute in Ohio because of the Ohio choice of law provision in his employment agreement.  *Id*.

---

[7] Defendants do not explain how Bernecki and the remaining plaintiffs "conspired" in this case.

The Court does not find these arguments, nor defendants' cited authority, to be persuasive here.  It would be unusual to bind a non-signatory to a contract.  Though exceptions certainly exist in the law, defendants have not identified one that applies in this case.  Accordingly, defendants' motion to dismiss Bernecki's NYLL, FLSA, and TVPA claims pursuant to the doctrine of *forum non conveniens* will be denied.

**B.  Bernecki's Remaining Claims**

Defendants have also advanced arguments pertaining to Bernecki's remaining claims for violations of the NYLL and the TVPA pursuant to Rule 12(b)(1) and 12(b)(6), respectively.  Defendants do not argue in favor of dismissal of Bernecki's FLSA claims on separate grounds.

**1.  NYLL §§ 195(1) and (3)**

Bernecki alleges that defendants violated NYLL §§ 195(1) and (3) when they failed to provide him with accurate wage statements and wage notices. Compl. ¶¶ 99–112.

Defendants have moved for dismissal of these claims pursuant to Rule 12(b)(1).  Defendants argue that Bernecki lacks standing to pursue these claims because he has not identified a causal connection between a concrete injury-in-fact and defendants' alleged violations of NYLL §§ 195 (1) and (3). Defs.' Mem. at 10–11.

Article III standing is a constitutional requirement to be heard in federal court. After all, federal courts are courts of limited jurisdiction. To have standing at the pleadings stage, the plaintiff must plausibly allege that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (U.S., 2016).

In the context of NYLL § 195 claims, district courts within the Second Circuit are in agreement that "a plaintiff has standing if he plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Johnson v. Best Bev LLC*, 2025 WL 2734204, at *6 (N.D.N.Y., 2025) (quoting *Freeland v. Findlay's Tall Timbers Dist. Ctr., LLC*, 2024 WL 4652251, *2 (W.D.N.Y. Nov. 1, 2024)).

Upon review, Bernecki has satisfied the Article III standing requirement to pursue his NYLL claims in federal court. The complaint states that "plaintiffs have been harmed by this willful failure to provide notices because it concealed Defendants' improper conduct and delayed Plaintiffs' realization that Defendants were stealing wages." Compl. ¶¶ 104, 111. As discussed, this is sufficient at the pleadings stage to satisfy the injury-in-fact and

causation requirements of Article III standing.  *See Johnson*, 2025 WL
2734204, at \*6 (N.D.N.Y., 2025).

### 2.  <u>TVPA</u>

Finally, defendants argue that Bernecki's TVPA claim must be dismissed
for failure to state a claim.  Defs.' Mem. at 12–14.  Defendants argue that
because Bernecki freely entered into his employment agreement and
Cognovit Note.  *Id.* at 13.  In opposition, Bernecki argues that the liquidated
damages penalty included in the training clause constitutes a threat of
serious harm.  Pls.' Opp'n at 11–14.

"To establish a claim of forced labor under TVPA § 1589(a), plaintiff must
show that defendants knowingly provided or obtained her labor or services by
means of 'serious harm or threats of serious harm,' 'the abuse or threatened
abuse of law or legal process,' or 'any scheme, plan or pattern intended to
cause [her] to believe that, if [she] did not perform such labor or services, that
[she] or another person would suffer serious harm or physical restraint.'"
*N.Y.S. Nurses Ass'n v. Albany Med. Ctr.*, 473 F. Supp. 3d 63, 67 (N.D.N.Y.
2020) (quoting *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 2018 WL
4347799, \*8, 2018 U.S. Dist. LEXIS 156331, \*20-\*21 (E.D.N.Y. Sept. 12,
2018) (cleaned up).

Upon review, plaintiff's TVPA claim will be dismissed. Bernecki has
alleged that he freely signed his employment contract and Cognovit Note.

Compl. ¶ 30.  There are no allegations of fraud or of duress.  Instead,

Bernecki has attempted to fashion a TVPA claim out of a contract dispute.

Whether a liquidated damages clause results in a penalty is not within the

purview of the TVPA.  Accordingly, Bernecki's TVPA claim will be dismissed.

## V.  <u>CONCLUSION</u>

In sum, plaintiffs Finein, Pitta, Elling, and Avrakotos's claims will be

dismissed pursuant to the doctrine of *forum non conveniens*.  Each of these

signed employment agreements containing forum selection clauses that

expressly limit litigation to a state forum.  The Court finds that the forum

selection clauses are *prima facie* valid and enforceable.  The Court notes the

relative difficulty of this decision.  On one hand, the Court should afford

weight to the plaintiffs' choice of forum by filing their lawsuit here.  On the

other hand, the Court must respect—and afford proper weight—to the

contractual intent of the parties to litigate disputes "arising under" the

employment agreement in Ohio state court.  The Court is confident that this

result strikes the appropriate balance.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in

part;

2.  Defendants' motion to dismiss plaintiffs Finein, Pitta, Elling, and Avrakotos' claims pursuant to *forum non conveniens* is GRANTED;

3.  Defendants' motion to dismiss Bernecki's claims pursuant to *forum non conveniens* is DENIED;

4.  Defendants' motion to dismiss Bernecki's NYLL claims pursuant to Rule 12(b)(1) is DENIED;

5.  Defendants' motion to dismiss Bernecki's TVPA claims pursuant to Rule 12(b)(6) is GRANTED; and

6.  Defendants are ordered to file an answer to all remaining claims by no later than February 23, 2026.

The Clerk is directed to terminate the pending motion and set deadlines accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  February 9, 2026
        Utica, New York.